## Case No. 6,373.

### The HENRY.

### [1 Hask. 100.] 1

### District Court, D. Maine. Dec., 1867.

#### FORFEITURE OF VESSELS—RESIDENCE OF OWNER —ENROLLMENT.

An enrolled vessel, sailing under a fishing license, is not liable to forfeiture because a part-owner, a citizen of the United States, resides in a foreign country, even though he is not a United States consul, or agent for and partner in a firm composed of citizens of the United States, here carrying on trade.

In admiralty. Libel in rem by the United States claiming a forfeiture of the schooner Henry, because she was owned in part by a citizen of the United States resident in a foreign country. The owners made claim to the vessel, and demurred to the libel as insufficient in law.

George F. Talbot, Dist. Atty., for the United States.

Albert W. Bradbury and Bion Bradbury, for claimants.

FOX, District Judge. This is a proceeding against this schooner for an alleged violation of the navigation laws. The count in the libel is for fraudulently and knowingly using a certain certificate of record, to wit; an enrolment to which she was not entitled, inasmuch as the "schooner was then and there owned as to one fourth part by one Geo. E. Myrick, a citizen of the United States, who then usually resided in a foreign country." This is the only count, and it is founded on, and is in the words of the act of December 31, 1792 [1 Stat. 287], relating to registry of ships and vessels. Jabez Myrick and George E. Myrick appeared as claimants, and for the purpose of presenting the question, a demurrer is filed by them, and the case submitted on the demurrer and the further agreement of the parties, "that the schooner was formerly the property of one of the claimants, he then being a citizen resident in this state; that she was by him duly enrolled and licensed for fishing, and that subsequently this owner being resident in New Brunswick, conveyed a share of the vessel to the other claimant, a resident citizen of Maine, and that the vessel was enrolled in this manner in Frenchman's Bay collection district, and a new fishing license taken out, under which document she was sailing at the time of her seizure.

Under these circumstances was the vessel liable to forfeiture? An examination of the act of December 31, 1792, entitled "An act concerning the registering and recording of ships and vessels," demonstrates that it was designed to be confined entirely to those two classes of vessels. It provides for the registry of ships and vessels owned by citizens,

and for record of the same when owned by the subjects of foreign powers. The first nineteen sections are confined to registered vessels entirely, whilst from the 19th to the 25th, it relates wholly to the record of title of ships owned by foreigners. In the one case, a certificate is issued to the citizen, which in terms recites that the ship or vessel is registered. In the other, a certificate is issued to the alien similar to the former, with the exception that it recites the record of the title. One is spoken of throughout the act as "a certificate of registry," and the other as "a certificate of record."

By the second section of this act, vessels entitled to registry must be wholly owned by a citizen or citizens of the United States; and it is further provided that "no such ship or vessel shall be entitled to be registered, or if registered to the benefits thereof, if owned in whole or in part by any citizen of the United States, who usually resides in a foreign country, during the continuance of such residence, excepting he be a consul of the United States, or an agent for and a partner in some house of trade or partnership consisting of citizens of the United States actually carrying on trade within the said States." It is not claimed that the non-resident owner in the present case was within the exception.

By the 27th section, the vessel is forfeited if any certificate of registry or record shall be fraudulently or knowingly used for her, she not then being actually entitled to the benefit thereof.

Under these provisions of the act of 1792, I do not see that any forfeiture has been incurred in the present case; and for the reason, that there is nothing in the act itself which extends any of its provisions to enrolled vessels. It was designed to apply to registered and recorded vessels, and to those two classes only; and the phrase "certificate of record" must be confined to the class and description of vessels contemplated by the act, and expressly included within it by this precise description. An enrolled vessel was of an entirely different description; and although an enrolment is a record, and the certificate of a vessel's enrolment is a certificate of record, yet it was not the kind of certificate then contemplated in this section of this act. This will be made quite apparent on reference to the act of 1789 [1 Stat. 55], which provided for the three classes of vessels, viz: registered, owned by our own citizens; recorded, when owned by foreigners; and enrolled, when employed in the coasting trade or fisheries, and owned by citizens of the United States. By the 35th section of this act (chapter 12), it was enacted, "that if any certificate of registry, record, or enrolment, shall be fraudulently used for any ship or vessel not entitled to the same by this act, such ship or vessel shall be forfeited." This provision is the same as that now under consideration from the act of

1 [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

1792, excepting that it was found necessary to specify an enrolment specifically, in order to include it within the provision. The fact that it is omitted in the act of 1792, which is confined to ships registered and recorded, is certainly conclusive that it was not intended by any of the provisions of the act, to subject enrolled vessels to forfeiture for a violation of them as prohibited in the 27th section.

The provisions of the 2d section of the act of 1792, requiring owners not only to be citizens, but residents, in order to allow these ships and vessels the benefit of registry, were taken literally from the act of 1789. The same clause is then found in the 5th section, and is confined to the case of registered vessels, although the act subsequently provides for vessels being recorded, and also for their being enrolled, showing most clearly, that it was not the design of the act of 1789, to extend these provisions to but a single class, the registered ships.

The provisions of the act of 1789, which applied to the three different classes of ships and vessels, registered, recorded, and enrolled, were in 1792 and 1793 divided, and are to be found in two acts, one passed December 31, 1792 [1 Stat. 287], and the other February 18, 1793 [1 Stat. 305]. The first is confined to registered and recorded vessels, being chapter 1 of the session, and the other being chapter 8 of the same session, as its title imports, being "an act for enrolling and licensing ships or vessels to be employed in the coasting trade and fisheries and for regulating the same." The forfeiture of an enrolled vessel, I apprehend therefore, if any, must be found in this last act, either directly, or by an adoption of the forfeiture created and provided for in some other act. An examination of the act will show that it deals forth with a liberal hand its own penalties and forfeitures for violation of its provisions, without any occasion to grasp at others from any other act. In fact, in some instances, the same offense is punished differently by the two acts; for instance, both acts require the name of the vessel and the home port to be painted on the stern; by act of 1792, a penalty of fifty dollars is imposed if a registered or recorded vessel is found violating this provision, whilst by act of 1793, if a licensed vessel is thus found, the penalty is only twenty dollars.

An examination of the various provisions of the act of 1793 will satisfy any one, that the framers of the act were not sparing of forfeiture, but were ready and willing to inflict this extreme penalty in all cases deemed advisable.

By the 5th section, the vessel and cargo are forfeited if she is found with a forged or altered license, or making use of a license granted for any other ship or vessel.

By the 6th section, any ship or vessel other than registered, if over twenty tons, found trading between district or districts, &c., or fishing, without being enrolled and licensed, and if between five and twenty tons, without a license and having on board any articles of foreign growth or manufacture, or distilled spirits other than sea stores, shall with her lading be forfeited.

By the 8th section, if any enrolled vessel proceeds on a foreign voyage without first giving up her enrolment and being duly registered, such vessel with goods imported in her shall be liable to seizure and forfeiture.

Under the 17th section, an enrolled vessel is liable to forfeiture if goods and merchandise of foreign growth and manufacture, or distilled spirits, are found on board, or landed from her without a manifest or a certificate from the collector of the port from whence she sailed, if the same are of the value of $800.

By the 21st section, if any ship or vessel licensed for the fisheries shall be found within three leagues of the coast with goods, wares and merchandise of foreign growth or manufacture, on board, exceeding the value of $500, without a permit on board from the collector of the district where she was previous to her departure for her to touch and trade at a foreign port or place, such ship or vessel with such goods is made liable to seizure and forfeiture.

By the 32d section, it is enacted, "that if any licensed ship or vessel shall be transferred in whole or in part to any person who is not at the time of such transfer a citizen of, and a resident within the United States, or if any such ship or vessel should be employed in any other trade than that for which she is licensed, or shall be found with a forged or altered license, or one granted for any other ship or vessel, every such ship or vessel * * * and the cargo found on board her shall be forfeited."

These are all the provisions found in the act which in terms inflict a forfeiture of the vessel, and it is very clear that the facts of the present case do not bring the Henry within any one of them. The one most applicable is that found in section 32, prohibiting the sale of a licensed vessel, or any part thereof, to any person who is not a resident citizen. It is claimed that this must clearly manifest the design and purpose of congress, that resident citizens alone should enjoy the privileges granted to licensed ships and vessels, as they have prohibited the sale of such vessels to any one not a resident within the United States. Such may have been the purpose of congress; but to effectuate that, they have only prohibited the sale, and have nowhere declared in regard to enrolled vessels, as they have by the act of 1792 in respect to registered vessels, "that no such ship or vessel shall be entitled to be so registered, or if registered to the benefits thereof, if owned in whole or in part by any citizen of the United States, who usually resides in a foreign country during the continuance of such residence."

It is claimed by the government, that a proper construction of the 2d section of the act of 1793 will subject this vessel to forfeiture, as it either expressly or impliedly adopts the registry act, and subjects an enrolled vessel to its penalties and forfeitures. If such had been the intention of congress, it would have hardly been thought necessary to have in terms introduced into the act the various grounds of forfeiture just mentioned, and especially subjecting an enrolled vessel to forfeiture when sold to a non-resident citizen. No such consequences result from such sale of a registered vessel, provided the transfer is made however, in the manner prescribed in the 7th section of the registry act.

The true rule of construction in such cases is laid down in Hubbard v. Johnstone, 3 Taunt. 220. It was there decided that the ship registry acts of Great Britain, so far as they apply to defeat titles and create forfeitures, are to be construed strictly as penal, not liberally as remedial laws. Heath, J., said, "I think the same rule ought to obtain here, as in the construction of clauses inflicting pains and penalties in the revenue laws, if they be ambiguous and obscurely worded, the interpretation is ever in favor of the subject."

A careful examination of the 2d section of the act of 1793 will demonstrate, that it was not the intention of congress to adopt the penalties found in the registry act. This section of the enrolment and licensing act provides, "that from and after the last day of May" then "next, in order for the enrolment of any ship or vessel, she shall possess the same qualifications, and the same requisites in all respects shall be complied with as are made necessary for registering ships or vessels by the" registry act, "and the same duties and authorities are hereby given and imposed on all officers respectively in relation to such enrolment, and the same proceedings shall be had in similar cases touching such enrolments, and the ships or vessels so enrolled, with the master or owner, or owners thereof, shall be subject to the same requisites as are in those respects provided for vessels registered, by virtue of the aforesaid act." Vessels so enrolled are by the first section deemed to be vessels of the United States, entitled to the privileges of ships and vessels, employed in the coasting trade or fisheries. The same qualifications and requisites for enrolment as for registry are requisite, but it nowhere declares that if the ship or vessel is destitute of them, she or her owners shall be subject to the same penalties as registered ships and vessels. The vessel not being legally enrolled is not entitled to the privileges of a coasting or fishing vessel, and the same act apportions its punishments according to the nature and degree of the violation of its provisions. It enacts its own prohibitions, and avoids and prescribes its own punishment for these infractions.

Mr. Justice Story in the case of The Two Friends [Case No. 14,289], a libel against a licensed vessel claiming her forfeiture for a false oath of the owner as to his citizenship, says, "It is true, that the act for registering vessels, sec. 4, declares that a false oath by the owner, in any matter of fact required to be sworn in that section previous to the grant of a registry, shall work a forfeiture of the vessel. And the act for enrolling and licensing vessels in the coasting trade and fisheries, in section 2, c. 8, Act 1793, provides that in order to obtain an enrolment, vessels shall possess the same qualifications, and the same requisites in all respects shall be complied with as are made necessary to the registry of vessels, and the same duties and authorities are given and imposed on officers, and the same proceedings are to be had in similar cases touching such enrolment, and the ships and vessels so enrolled, with the masters and owners thereof, are to be subject to the same requisites as are prescribed for the registry of vessels. But it is nowhere declared that a violation of these provisions shall be followed with like penalties and forfeitures. * * Now, it is certainly not the duty of the court to seek out new modes of punishment when the legislature has prescribed them in its own direct terms. Nor can it be proper to pronounce that to be a qualification, requisite, duty or proceeding, within the act, which is a forfeiture for a wilful violation of the same act."

Judge Ware, in U. S. v. Bartlett [Case No. 14,532], says, "That while the license act requires the same qualifications of the vessel, and makes the same requisites necessary for the enrolment as for the registry of a vessel, it nowhere denounces the same penalties and forfeitures."

Upon a careful examination of the acts in question, I can find no provision subjecting the vessel in this case to forfeiture for the alleged cause that she was employed under an enrolment and license, whilst one of her owners was a citizen of the United States usually resident in a foreign country, and not within the class excepted in the provisions of the 2d section of the registry act, although she might have been subject to forfeiture under like circumstances if she had been a registered ship or vessel. Libel dismissed. Certificate of probable cause to issue.